(79 N. W. Rep. 869.)

---

EDWIN C. ṀCHENRY, *et al. vs.* KIDDER COUNTY, N. D.

Opinion filed May 20, 1899.

### Quieting Title—Tax Sales.

Section 5904 of the Revised Codes construed, in connection with section 79, c. 126, Laws 1897, and *held,* in an action brought to quiet title, that the Court may adjudicate upon the validity of any liens which are derived through or under a tax sale or sales, but liens not so derived cannot be passed upon in such an action.

### Liens Not Based Upon Tax Sales Not Adjudicated.

When the purpose of an action to quiet title is to determine adverse rights in land growing out of a tax sale, the word "lien," as it occurs in the complaint, should be restricted to such liens as the Court may lawfully pass upon in such an action, viz: to liens based upon tax sales; and, therefore *held,* that liens not based upon tax sales which may be alleged in such answer will not be adjudicated by the courts against the consent of the plaintiff, and that the plaintiff's dissent may be indicated by demurring to the answer.

### Statutory is Exclusive Remedy for Collection of Taxes.

Under the revenue laws of this state, now existing, the summary processes provided by statute for the enforcement of taxes are an exclusive remedy, and it is accordingly *held,* that an action in equity in the nature of a suit to foreclose a mortgage does not lie to foreclose a lien upon land created by a tax levy.

### Act of Legislature Annulled Prior Tax Sale.

In a case where lands had been sold at the annual tax sale in 1895, in satisfaction of taxes levied against them which became delinquent in 1895 and prior years, and were never redeemed from such sale, *held,* that all the rights acquired by the state under such tax sale were voluntarily surrendered by the state, by virtue of an act of the legislature embraced in chapter 126, Laws 1897, entitled "An act to enforce the payment of taxes which became delinquent in and prior to the year eighteen hundred and ninety-five." The state, through this enactment, voluntarily accepted in lieu of its rights acquired in the lands bid in by the state, the right to enforce the original tax upon which such sales were made. This action of the state, through the legislature, necessarily operated to annul such sales, and to wholly release the lands so purchased from the consequences of such sale.

Appeal from District Court, Kidder County; *Winchester,* J.

Suit by Edwin H. McHenry and Frank G. Bigelow, receivers of the Northern Pacific Railroad Company, against the County of Kidder and the State of North Dakota. Judgment for plaintiffs, and defendants appeal.

Affirmed.

*Charles H. Stanley* (*Fred A. Baker,* of counsel), for appellants.

*James B. Kerr,* for respondents.

WALLIN, J.   This is an action to quiet title, brought by the receivers of the Northern Pacific Railroad Company against the County of Kidder and the State of North Dakota.   In their complaint the plaintiffs allege their ownership in fee, as such receivers, of certain lands in Kidder county, described in the complaint, which lands are conceded to be a part of the land grant of said railroad company.   The complaint alleges "that the said defendants, the State of North Dakota and County of Kidder, North Dakota, claim some title or interest in or lien upon said lands adverse to these plaintiffs, that the claims of the said defendants are without any right whatever, and that said defendants have no right, title, interest, or lien in or to or upon the said described lands, or any of them." The complaint demands that the defendants be required to set forth the nature of their claims, to the end that such claims may be determined by the court, and, finally, that the court shall adjudge that the defendants have no interest, title, right, lien, or lawful claim in or to the said lands, or any of them, and that the plaintiffs' title to said lands be adjudged valid.   To this complaint the defendants answered, admitting, in effect, that the lands in question were a part of the land grant of said railroad company, and that the plaintiffs, as such receivers, owned said lands in fee simple, unless the defendants owned the same by virtue of the tax proceedings, which are set out in the answer; and all of the defendants' claims to said lands are based exclusively upon such tax proceedings.   The answer alleges the regular levy of territorial, state, county, township, and school district taxes against the lands described in the complaint for the years 1889, 1892, 1894, 1895, and 1896, and that said taxes have not been paid.   Said answer further alleges title to and ownership of said lands in the State of North Dakota, and bases such title and ownership upon a tax sale thereof, which tax sale is set out as follows in the answer:   "That in the year 1895 the lands in question in this suit, and all other lands in said county on which the taxes for 1889 and 1894 had not been paid, were regularly sold at a tax sale in said County of Kidder for the taxes of 1889 and 1894, and the lands in question in this suit were regularly bid in by the State of North Dakota, and the state now holds the title so acquired in trust for itself and for the County of Kidder, and, for the several civil townships and school townships or districts of said county."   The defendants claim that the facts averred in their answer, which we have above epitomized, constitute a proper counterclaim in this action, and upon that assumption the defendants demand affirmative relief against the plaintiffs as follows:   "(1) That the said taxes levied in the years 1889, 1892, 1894, 1895, and 1896 be decreed to be a valid and perpetual lien and charge upon the lands in the suit.   (2) That the taxes levied in 1889, 1892, and 1894 against the lands

be adjudged and declared to be valid delinquent taxes, for which said lands are subject to sale under and in pursuance to an act entitled 'An act to enforce the payment of taxes which became delinquent in and prior to the year 1895.' [Laws 1897, p. 76] (3) That said taxes levied in 1895 and 1896 against said lands be declared to be good and valid taxes, and good and valid delinquent taxes, for which said lands are subject to sale under an act entitled 'An act prescribing the mode of making assessments of property,' etc., approved March 8, 1897; also, that said taxes of 1895 and 1896 be declared to be valid subsequent taxes within the meaning of sections 18, 19, and 20 of the act relating to the enforcement of delinquent taxes, referred to in paragraph 2 of the prayer for relief." Section 4 of the prayer is in the following language: "That the said taxes for the years 1889, 1892, 1894, 1895, and 1896, and the penalty and interest thereon, may be declared and decreed to constitute a lien upon the said several parcels of land in the nature of a mortgage lien, and that foreclosure of the same may be had by a sale of the lands in the same manner and form as a mortgage lien may be foreclosed under the statutes of the State of North Dakota and the rules and practice of this Court; all the statutory rights and privileges of the plaintiffs as taxpayers being preserved to them." Section 5 asks that the said taxes may be decreed to be a first lien and charge upon moneys in the hands of said receivers. This is followed by a prayer for general relief. To this answer the plaintiffs interposed a general demurrer for insufficiency, and the trial court, after hearing counsel upon the issues raised by the demurrer, sustained such demurrer, and by its order directed that judgment be entered in favor of the plaintiffs, adjudging said plaintiffs to be the owners of the lands described in the complaint, free from any right, title, estate, or interest in said defendants, or either of them, and free from any lien arising by virtue of any tax sale claimed on the part of the said defendants, or either of them. Judgment was entered pursuant to the terms of said order, and the defendants appeal therefrom to this Court.

In disposing of the various questions presented by the record, it will be necessary to take up and settle a preliminary question of practice which counsel have discussed in their briefs. It is this: Is it the duty of this Court, in an action to quiet title, such as this, to consider and pass upon any lien which may be set out by answer, but which does not arise from, or in consequence of, any tax sale of the lands involved? The proper solution of this question involves a construction of section 5904 of the Revised Codes, in connection with section 79 of chapter 126 of the Laws of 1897. This Court has had occasion to hold, in an action brought under the provisions of section 5904, supra, that mere liens, as distinguished from adverse estates and interest in lands, cannot, in the absence of consent, be adjudicated. This holding was upon the theory that such an action is peculiar in its nature, and must be governed by the letter of the statute, which creates this form of action and dis-

tinguishes it from all other actions which may be instituted under the Codes of Procedure existing in this state. See *Power* v. *Bowdle,* 3 N. D. 107, 54 N. W. Rep. 404, citing *Hooper* v. *Henry,* 31 Minn. 264, 17 N. W. Rep. 476, and *Mitchell* v. *McFarland,* 47 Minn. 535, 50 N. W. Rep. 610. And see, also, *Buxton* v. *Sargent* 7 N. D. 503, 75 N. W. Rep. 812. In the case last cited this Court said : It is true that, when both of the litigants actually try in such an action a question of lien, the courts will not refuse to pass upon that question, but will, on the contrary, render judgment thereon the same as if it had been a proper issue in the case." In *Power* v. *Bowdle* the following language was used by the Court: "Where a defendant elects to have his own case determined in such action, and sets out the facts of his case, and asks judgment upon such facts, and the Court, without objection, pronounces judgment thereon upon the merits, it will then be too late for the defendant to raise any technical objection based upon the form of the action." We think the case at bar does not come within the exception to the rule as stated in the cases cited. In this case there has been no trial upon the facts and merits, and the trial court did not, as in the cases cited, proceed to determine the matters and liens alleged in the answer, and to decide the same upon their merits, without objection, as was done in those cases. In the case at bar the plaintiffs, by demurring to the answer, met and challenged the right of the defendants to litigate the various liens alleged in the answer in this action. In this we recognize no element of consent, but, on the contrary, we see only dissent and challenge.

But counsel contend that the plaintiffs, by the express terms of their complaint, have invited the defendants to answer and set out all their claims to the land, including any liens which they have, or claim to have, upon the lands in question. To this proposition we cannot yield an assent. The plaintiffs have, it is true, invited the defendants to set out any liens which they have or claim, as well as their claims of title to the lands ; but we think the language of the complaint must be construed with reference to the statute under which the complaint was obviously drawn, viz: with reference to section 79 of the act of 1897, which section is found on page 286 of the Laws of 1897. The surroundings of the case, as well as the record, show that the purpose of the plaintiffs in bringing this action is to determine the rights of the defendants in and to the lands in question arising out of a certain tax sale thereof which was made by Kidder county in the year 1895, as stated in the answer. It is entirely clear to this Court that this action would never have been instituted but for the fact of such tax sale. Under the provisions of section 79, above cited, the court is given authority, in this form of action, to adjudicate with respect to any lien which a defendant sets out in his answer, provided, always, that such lien arises upon a tax sale. As we have said, the action was clearly brought under this statute, for the very purpose of determining any adverse title or lien which the defendants might have or claim

under said tax sale. It being brought for that purpose, and none other, it comes within the purview of the statute; and the language of the complaint, therefore, should be interpreted with reference to the statute. When so interpreted, the word "lien," as used in the complaint, must be confined to the only lien or liens which the Court has power to investigate in this class of actions,—*i. e.* liens arising upon tax sales. It follows, from this view of the complaint, that the plaintiffs have never invited the defendants to plead in their answer any liens whatsoever other than such as may have arisen upon the sale of their lands for taxes. Hence this case does not in any aspect present a case where the parties are voluntarily litigating questions not within the purview of the statutes regulating this form of action. It follows, from this holding, that for technical reasons the alleged liens upon the lands in question which would result from a valid levy of the taxes for the five years referred to in the answer cannot be considered, or their validity or invalidity determined, in this action.

But we hold, further, that the same practical result would be reached in any form of action, and that without reference to technical considerations. As has been seen, the defendants ask, as a part of their relief, that all the alleged liens of the several tax levies in question be adjudged to be valid and existing liens upon the lands; but this is only preliminary to the further prayer, "that foreclosure of the same may be had by a sale of the lands in the same manner and form as a mortgage lien may be foreclosed under the statutes of North Dakota." This demand for relief, is novel in this jurisdiction, and we are entirely clear that no such relief should be granted. Counsel have cited no authority in point in support of this branch of their prayer, and from our standpoint the remedy by action in the nature of a mortgage foreclosure would be superfluous under our revenue laws. Any valid tax can be collected by the summary processes pointed out in the statute, and a claim of taxes not legally valid could not be enforced by a foreclosure in equity. It is a well-established rule that a remedy provided by statute for the enforcement or collection of taxes is exclusive, unless there is express statutory provision to supplement such remedy by action. Cooley, Tax'n, pp. 448, 449; 25 Am. & Eng. Enc. Law, p. 298, and cases cited in note 6.

One further point remains to be noticed. The answer states that the lands in question were sold for taxes by Kidder County, at the tax sale in 1895, for taxes levied thereon in the years 1889 and 1894, and that at such sale the state bid in the lands, and now holds them in trust for itself and Kidder county. The defendants, in their prayer for relief, have omitted to ask for a decree confirming and making absolute any estate, right, title, or lien which may have inured to the state on account of such alleged purchase of the lands at tax sale; and, in strictness, we think the defend-

ants are precluded from asking such relief by the very terms of their prayer for relief. By their prayer they expressly ask the Court to declare the very taxes for which said sale was made to be valid and subsisting taxes, and, using the language of the prayer, they ask that "each and every item of said taxes, and of the penalty and interest thereon, may be declared and decreed to be a good, valid, perpetual, and permanent lien and charge on the several parcels of land on which they were respectively levied." It would seem to be needless to say that, if these taxes are now valid taxes, as claimed, and are still existing liens on the lands, as claimed, the sale of the lands for the same taxes was invalid, and that no title or lien was created by the sale. A valid sale of land for taxes necessarily operates to extinguish the taxes, and, unless a sale does so operate, it is ineffectual for any purpose, and no rights can be based upon it.

But we further hold that, if the lands were purchased by the state at the tax sale held in 1895, the state could not, by such purchase, acquire a fee-simple title, or any absolute estate in the lands, for the reason that the owner of such lands could redeem them from such sale at any time after the forfeiture. See section 86 of chapter 132 of the Laws of 1890. But a more recent statute, and one which we regard as being expressly applicable to the case under consideration, was enacted in 1897, and is now embraced in chapter 67 of the Session Laws of that year. It is entitled "An act to enforce the payment of taxes which became delinquent in and prior to the year 1895." Among the delinquent taxes referred to expressly in this statute, and for the collection of which an action may be brought under this statute, are those taxes for which lands have been sold at tax sales and bid off by the state or county. The statute requires the county treasurer to prepare a delinquent tax list, and, among other provisions, it declares that "such list shall include such taxes upon any real estate which may at any tax sale have been struck off to or declred to be forfeited to the state or county, whether such sale or forfeiture was valid or invalid." Laws 1897, c. 67, § 1. By these provisions the legislature has seen fit, in effect, to voluntarily surrender all title, right, or lien which the state had theretofore acquired under tax sales of land bid off for the state or county, whether such sales were valid or invalid, and in lieu of the rights acquired by such sales the state has accepted the tax itself, upon which the sales were made, as it existed prior to such sales. This the state had an undoubted right to do, and this it has done; and the courts as well as the public corporations interested in such taxes and tax sales, are bound to observe the mandate of the supreme authority thus clearly expressed. The legislature, by this statute, has chosen, for reasons satisfactory to itself, to relegate the counties to the peculiar remedy which the statute of 1897 provides. Under this statute the counties are permitted to institute an action against all the lands of the plaintiffs bid in by the state, and in such action

can collect the taxes of 1889, 1892, and 1894. The taxes of 1895 and 1896 may be collected by the summary processes which the statute has provided for the purpose of collecting such taxes.

Our conclusion is that the judgment of the trial court was right, and the defendants, under the law and practice of the courts, are not entitled to .the equitable relief demanded in the answer. The judgment must be affirmed. All the judges concurring.